UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
LA SALLE BANK NATIONAL ASSOCIATION, :

                Plaintiff, :

     -against- :

CIBC INC., :

                Defendant. :
----------------------------------X

08 Civ. 8426 (WHP)

MEMORANDUM & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/17/11

WILLIAM H. PAULEY III, District Judge:

      This case involves a commercial loan default. LaSalle Bank National Association ("LaSalle"), as trustee for certificate holders of certain commercial mortgage securities, brings this breach of contract action against CIBC. CIBC sold the loan with various express warranties regarding its risk. Shortly after the loan's sale, the debtor ceased making payments and eventually filed for bankruptcy. Both parties move for summary judgment. LaSalle's motion is granted in part and denied in part, and CIBC's motion is granted in part and denied in part.

## BACKGROUND

      Frank J. Gorman, Sr. ("Gorman") formed Beaver Brook Village, LLC ("Beaver Brook"), a limited liability corporation, to hold title to a mixed-use real estate development in Massachusetts ("the Property"). (Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated Mar. 4, 2011 ("Pl. 56.1 Stmt.") ¶ 11.; Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated Mar. 4, 2011 ("Defs. 56.1 Stmt.") ¶ 7.)

On March 19, 2007, CIBC closed on a loan to Beaver Brook in the amount of $9.5 million pursuant to a Promissory Note ("the Loan") and secured by an accompanying Mortgage, Assignment of Leases and Rents, and Security Agreement ("the Mortgage"). (Pl. 56.1 Stmt. ¶ 14.) The Loan provided for a $400,000 Seasoning Reserve that CIBC would release if the Property met a particular Debt Service Coverage Ratio. (Pl. 56.1 Stmt. ¶ 17.) Prior to the closing, Beaver Brook pledged its right to the Seasoning Reserve to Louis Saab, a creditor ("Saab Pledge"). (Pl. 56.1 Stmt. ¶ 37.) After the closing, Gorman caused Beaver Brook to execute a second mortgage and security agreement on the Property in his favor in the amount of $1,654,258.00 ("Second Mortgage"). (Pl. 56.1 Stmt. ¶ 43.) The Second Mortgage purportedly secured a payment to Gorman for work performed prior to the Loan. (Pl. 56.1 Stmt. ¶ 43.) Beaver Brook never made a payment on the Second Mortgage. (Def. 56.1 Stmt. ¶ 61.)

On June 8, 2007, a Massachusetts state court granted an equitable lien on the Second Mortgage and Seasoning Reserve in favor of Gorman's and Beaver Brook's creditors. ("Litigation Liens") (Pl. 56.1 Stmt. ¶ 51.)

Thereafter, CIBC sold the Loan to J.P. Morgan Chase Commercial Mortgage Securities Corp. ("J.P. Morgan"). (Pl. 56.1 Stmt. ¶ 21.) Two agreements governed that sale: the Mortgage Loan Purchase Agreement ("MLPA") and the Pooling Service Agreement ("PSA"). (Declaration of Christopher C. Costello, dated Mar. 4, 2011 ("Costello Decl.") Ex. 63: MLPA; Costello Decl. Ex. 64: PSA.) Under the PSA, LaSalle became the trustee for J.P. Morgan certificate holders. (Pl. 56.1 Stmt. ¶ 23.) In the MLPA, CIBC made numerous express warranties regarding the Loan. (Pl. 56.1 Stmt. ¶ 34.)

Inauspiciously, Beaver Brook missed its first two payments after the Loan was sold and securitized. (Pl. 56.1 Stmt. ¶ 55.) On August 19, 2007, Beaver Brook filed a Chapter 11 bankruptcy petition. (Pl. 56.1 Stmt. ¶¶ 55, 58.) Shortly thereafter, Gorman also filed a Chapter 11 petition. (Def. 56.1 Stmt. ¶ 62.) In February 2009, the Loan and Mortgage were modified and Beaver Brook emerged from bankruptcy. (Def. 56.1 Stmt. ¶¶ 62; 63.) Under the modifications, the Loan principal was increased to $10,265,579.92, which included the missed payments, late fees, and legal fees associated with the bankruptcy. (Def. 56.1 Stmt. ¶ 62.) In May 2010, Beaver Brook began missing its new debt service payments. (Def. 56.1 Stmt. ¶ 65.) It filed for bankruptcy a second time in October 2010. (Def. 56.1 Stmt. ¶ 65.)

In December 2007, LaSalle claimed that CIBC had breached various representations and demanded repurchase of the Loan or a substitute of the Loan. (Costello Decl. Ex. 86: Letter dated December 21, 2007 from LNR Partners Inc. to CIBC ("December 2007 Letter").) In February 2008, LaSalle again informed CIBC of various breaches of warranty. (Costello Decl. Ex. 87: Letter dated July 2, 2008 from LNR Partners Inc. to CIBC ("July 2008 Letter").) In July 2009, LaSalle notified CIBC of additional claims. (Def. 56.1 Stmt. ¶ 83.) When CIBC failed to cure, LaSalle filed this lawsuit.

## DISCUSSION

I. Legal Standard

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of

demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita, 475 U.S. at 586-87). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

II. LaSalle's Claims

    CIBC asserts that several claims do not belong in this lawsuit because either (1) LaSalle failed to properly plead them or (2) LaSalle failed to provide CIBC with notice, as required by the MLPA.

  A. Claims Based on the Saab Pledge

    Parties cannot raise unpleaded claims for the first time on a motion for summary judgment. See Greenidge v. Allstate, Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006); Fershtadt v.

Verizon Commc'ns, Inc., No. 07 Civ. 6963 (CM), 2010 WL 571818, *7 (S.D.N.Y. Feb. 9, 2010). While a plaintiff need not plead every legal theory supporting a particular claim, a plaintiff must "set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." Kearney v. Cty of Rockland, 373 F. Supp. 2d 434, 441 (S.D.N.Y. 2005). "Because a failure to assert a claim until the last minute will inevitably prejudice the defendant," it is inappropriate to raise new claims on summary judgment. Kearney, 373 F. Supp. 2d at 441.

While LaSalle makes no mention of the Saab Pledge in its Complaint, it argues that the Complaint's references to Representation 6 (that there are no claims on the Property) encompass the Saab Pledge. That bare allusion is insufficient to place CIBC on notice that the Saab Pledge is the basis for a claim. See Greenidge, 446 F.3d at 361 (declining to consider an alternate factual basis for plaintiff's bad faith claim that was not asserted in the Complaint). Accordingly, LaSalle's claims based on the Saab Pledge are not properly before this Court.

In contrast, LaSalle has adequately pled claims stemming from the Litigation Liens and underwriting standards in the Complaint. (Compl. ¶¶ 23, 34-35, 61.)

B. Waiver Under the MLPA

The MLPA provides that the "Seller . . . shall be given notice of any Breach . . . ." (MLPA, LB-LNR035893.) CIBC asserts that because LaSalle failed to provide notice regarding claims based on the Litigation Liens, underwriting standards, or breach of Representation 14 (the recent appraisal representation), LaSalle has waived these claims under the MLPA.

Turning first to the Litigation Liens and underwriting standards, it is clear that LaSalle did not waive those claims because LaSalle described them in the July 2008 letter and

the December 2007 letter, respectively. (July 2008 Letter, CIBC 002325; December 2007 Letter, CIBC 002315.)

While there is no explicit reference to Representation 14 in any of the letters, that does not end the inquiry. "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent, and that the best evidence of what parties to a written agreement intend is what they say in their writing." Innophus, Inc. v. Rhodia, S.A., 10 N.Y. 3d 25, 29 (2008) (internal citations and alterations omitted). When a contract is silent, a Court "must determine what the parties intended by considering the nature, purpose and particular circumstances of the contract known by the parties." Awards.com LLC v. Kinko's, Inc., 834 N.Y.S.2d 147, 152 (1st Dep't. 2007) (internal citations omitted). "Unless the silence creates an ambiguity or renders it unclear, the Court cannot rewrite the contract." Fesseha v. TD Waterhouse Investor Servs, Inc., 747 N.Y.S.2d 676, 679 (N.Y. Sup. Ct. 2002) (declining to imply a notice requirement when the contract was otherwise silent).

No language in the MLPA explicitly provides that failure to provide notice constitutes a waiver of a claim. And CIBC proffers no evidence that the parties intended the notice provision to create an absolute bar to suit. Nor has CIBC offered any evidence that the contract is ambiguous. Therefore, this Court declines to rewrite the contract, and finds that LaSalle's claim based on Representation 14 is properly before this Court. See Fesseha, 747 N.Y.S.2d at 679.

III. Breaches of Specific Representations

To prevail on a breach of warranty claim, the plaintiff must show (1) that it entered into a contract with the defendant, (2) the contract contained an express warranty by the

defendant with respect to a material fact, (3) the warranty was part of the basis of the bargain, and (4) the defendant breached the express warranty. LaSalle Bank Nat'l. Ass'n. v. Merrill Lynch Mortg. Lending, Inc., No. 04 Civ. 5452 (PKL), 2007 WL 2324052, *8 (S.D.N.Y. Aug. 13, 2007). Additionally, the MLPA provides that an actionable breach must have a "material and adverse effect" on the Property, the Loan, or the interests of investors. (MLPA, LB-LNR035893.) Here, the parties dispute only whether the warranty was breached and whether there was a material and adverse effect.

A. Representation 6

Representation 6 guarantees that the Property is "free and clear of any liens, claims, encumbrances, participation interests, pledges, charges, or security interests." (MLPA, LB-LNR035933.) It also provides that "no Mortgage Loan is secured by property which secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule." (MLPA, LB-LNRO35934.) LaSalle bases its breach of Representation 6 claim on the presence of the Second Mortgage and the Litigation liens.

1. Second Mortgage

A "claim" is a "demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 264 (8th ed. 2004). The Second Mortgage is clearly a claim on the Property because it is a demand for money made by Gorman against Beaver Brook. Therefore, the Second Mortgage breaches Representation 6. The Court need not read the word "claim" to mean a "legally enforceable claim," as CIBC asserts. Although the canon noscitur a sociis urges a court to construe contract terms "in accordance with the meaning of the words that are associated with them," that principle is inapplicable here because the term "claim" is

unambiguous. In re Enron Creditors Recovery Corp., 380 B.R. 307, 322 (Bankr. S.D.N.Y. 2008); see also DBT Gmbh v. J.L. Min. Co., 544 F. Supp. 2d 364, 381 (S.D.N.Y. 2008) (quoting 11 Williston on Contracts § 32:6 (4th ed. 2007)).

While LaSalle has demonstrated that CIBC breached, summary judgment is nonetheless inappropriate because there exists a genuine dispute as to whether the Second Mortgage materially and adversely affected the Property, the Loan, or the interests of the investors.

2. Litigation Liens

LaSalle contends that the Litigation Liens also breached Representation 6 because they were prohibited liens against property securing the Loan. As CIBC notes, the Litigation Liens do not even purport to impose any encumbrances on the Property. Rather, they extend only to Gorman's interests in the Second Mortgage and the Saab Pledge. Thus, the Litigation Liens do not constitute a breach of Representation 6, and summary judgment is granted in favor of CIBC on this portion of the claim.

B. Representation 10(d)

Representation 10(d) states that "[t]he terms of the Mortgage Loans or related Mortgage Loan documents have not been altered, impaired, modified, or waived in any material respect." (MLPA, LB-LNR035936.) LaSalle contends that the Second Mortgage impaired the terms of the Mortgage and the Loan because the Mortgage and the Loan prohibited additional liens against the Property. But that interpretation distorts the meaning of Representation 10(d). Representation 10(d) speaks only to actions by CIBC that waive, modify, alter, or impair the Loan's terms and not actions by third parties that impair the Loan's performance. The Second

Mortgage could not impair the Loan's terms because the terms explicitly prohibited it, and LaSalle could have sought recourse for the alleged violation. Accordingly, summary judgment is granted in favor of CIBC on this claim.

C. <u>Representation 13</u>

Representation 13 states in relevant part: "there is no other material default under any of the related Mortgage Loan documents . . . provided, however, that the representations . . . set forth in this sentence do not cover any . . . breach . . . that specifically pertains to or arises out of any subject matter otherwise covered by any other representation . . . ." (MLPA, LB-LNR035937.) LaSalle contends that the Second Mortgage violates Representation 13. However, the Second Mortgage is covered by another representation—Representation 6, which addresses prohibited encumbrances. Thus, the Second Mortgage is expressly excluded from Representation 13's purview, and summary judgment is granted to CIBC.

D. <u>Representation 14</u>

Representation 14 provides that "[t]he value of the Mortgaged Property relative to the value reflected in the most recent appraisal thereof is not impaired by any improvements which have not been completed." (MLPA, LB-LNR035937.) LaSalle claims it paid more for the Loan than the Property was worth because costs associated with new paving in the parking lot were not included in the appraisal. CIBC responds that (1) LaSalle failed to perform a condition precedent when it gave untimely notice and (2) there was no material and adverse effect flowing from any purported breach.

1. <u>Performance of a Condition Precedent</u>

Under New York law, a condition precedent is "an act or event which must occur before another party's duty to perform its promise arises." <u>LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc.</u>, No. 02 Civ. 4868 (HB), 2003 WL 21671812, at *3 (S.D.N.Y. July 16, 2003). CIBC contends that it is under no obligation to cure because LaSalle provided untimely notice one year after Beaver Brook filed for bankruptcy.[1]

Assuming <u>arguendo</u>, that the notice provision is a condition precedent, LaSalle's notice is timely, and CIBC is not relieved of its obligation to cure if there is a material and adverse breach. Section 2.03(b) of the PSA explicitly states "[n]otwithstanding anything contained in this Agreement or the [MLPA], no delay . . . in providing notice . . . [of a] Breach shall relieve the . . . Seller of its obligation to repurchase . . . ." (PSA, LB-LNR039241.) "[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." <u>Seabury Constr. Corp v. Jeffrey Chain Corp.</u>, 289 F.3d 63, 69 (2d Cir. 2002) (internal citations omitted). LaSalle's reading is reasonable and gives effect to both provisions: notice is required, and a delay in notice will not excuse the breaching party's obligation to cure.

---

[1] LaSalle argues that CIBC cannot, for the first time on summary judgment, argue that a condition precedent was not met. Fed. R. Civ. P. 9. However, a defendant may raise such an affirmative defense for the first time on summary judgment if there is no prejudice to the plaintiff. See <u>Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 603 (2d Cir. 2005). In <u>Aetna</u>, there was no prejudice to the plaintiff where the affirmative defense of lack of written consent was "particularly within [plaintiff's] knowledge." <u>Aetna</u>, 404 F.3d at 603. Similarly, LaSalle knows whether it provided notice to CIBC and therefore cannot claim it was prejudiced by CIBC raising this defense now.

2. Breach

LaSalle claims that paving on the Property was not reflected in the appraisal and that this omission constitutes a breach. CIBC counters that no breach occurred because the paving was a repair, not an improvement. Summary judgment is not warranted for either side because the evidence on this motion is too thin. Moreover, there is a factual dispute as to whether any such breach had a material and adverse effect.

E. Representation 25

Representation 25 provides "the Mortgage Loan has been serviced in all material respects in a legal manner in conformance with the Seller's servicing standards." (MLPA, LB-LNR035947.) CIBC contends that it did not breach because (1) it did not receive adequate notice and (2) it complied with its underwriting standards.

1. Adequate Notice

As previously noted, a condition precedent is "an act or event which must occur before another party's duty to perform its promise arises." LaSalle Bank Nat. Ass'n, 2003 WL 21671812, at *3. In its notice letters, LaSalle stated that the Second Mortgage evinced CIBC's failure to comply with its underwriting standards. CIBC claims that because LaSalle's Representation 25 claim is now based on other facts—such as overstating the gross income of the Property—LaSalle's notice is inadequate. However, assuming that notice is a condition precedent, the notice that LaSalle provided is sufficient. See Morgan Guar. Trust Co. of New York v. Bay View Franchise Mortgage Acceptance Co., No. 00 Civ. 8613 (SAS), 2002 WL 818082, (S.D.N.Y. Apr. 30, 2002).

In Morgan Guaranty Trust, as here, the defendant-seller made various express warranties about the quality of loans it sold and required notice of any breach of those warranties. See Morgan Guar. Trust, 2002 WL 818082, at *1. Judge Scheindlin found that plaintiff had adequately provided notice of a breach, even though it did not identify which individual loans violated the particular warranty. See Morgan Guar. Trust, 2002 WL 818082, at *12. Judge Scheindlin based her finding partly on the fact that defendant controlled the information that could establish the breach. See Morgan Guar. Trust, 2002 WL 818082, at *12. Similarly, CIBC controlled the information concerning deficiencies in its underwriting standards.

CIBC's reliance on Needham v. Candie's, Inc., No. 01 Civ. 7184 (LTS), 2002 WL 1896892 (S.D.N.Y. Aug. 16, 2002), is misplaced. In Needham, the plaintiff failed to provide any notice, and therefore, the Court was not confronted with the question of whether notice was sufficient.

2. CIBC's Compliance with Its Underwriting Standards

Drawing heavily on CIBC's underwriting manual (the "Manual"), LaSalle offers extensive evidence supporting its claim that CIBC deviated materially from its underwriting standards, and thus breached Representation 25. CIBC counters that the Manual only offers guidelines. (Costello Decl. Ex. 46: Expert Report of Brad Cohen, at 20; Costello Decl. Ex. 19: Manual, at 5.) CIBC emphasizes that the underwriting process includes the experience of the underwriter, review by CIBC's Credit Committee, and approval by CIBC's risk management group—in addition to the guidance provided in the Manual. Further, CIBC presents evidence of the due diligence it performed for the loan.

In view of the conflicting evidence on both sides, a jury could find for either party. Because a material fact is in dispute, summary judgment is denied to both parties. And here again, there is a material dispute regarding whether any underwriting deficiencies caused a material and adverse effect.

## CONCLUSION

For the foregoing reasons, LaSalle's and CIBC's motions for summary judgment are granted in part and denied in part. Specifically, summary judgment is granted in CIBC's favor with respect to LaSalle's claims concerning the Saab Pledge, Representation 6 concerning the Litigation Liens, Representations 10(d), and Representation 13. Further, this Court grants summary judgment on LaSalle's claim that the Second Mortgage breached Representation 6. In all other respects, the motions for summary judgment are denied. A trial is necessary on the issue of whether the Second Mortgage had a material and adverse effect and on LaSalle's claims for breaches of Representations 14 and 25. The Clerk of the Court is directed to terminate the motions pending at ECF Nos. 39 and 43.

Finally, CIBC's motion pending at ECF No. 80 to strike the two Declarations of Thomas F. Nealon III is denied.

Dated: October 17, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

Patrick Frank McManemin
Patton Boggs LLP
2000 Mckinney
Dallas, TX 75201
*Counsel for Plaintiff*

David Emilio Mollon
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
*Counsel for Defendant*